IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BARTLEY PIRINO, Jr.,** | : | No. 3:04cv698 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **ALLSTATE INSURANCE COMPANY,** | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Presently before the Court for disposition is Defendant Allstate Insurance Company's motion for summary judgment. The parties have fully briefed this matter and it is ripe for disposition. For the following reasons, we will grant the motion in part and deny it in part.

**I.    Background**

Plaintiff Bartley Pirino, Jr. purchased Allstate Landlords Package Policy Number 0019000947 ("the policy") to provide coverage for the building located at 1316-18 Vine Street, Scranton, Pennsylvania ("the property"). (Def. Ex. A in Supp. Summ. J.).  The policy included the following provision:

> Losses We Do Not Cover Under Coverages A and B:
> We do not cover loss to the property . . .consisting of or caused by:
> 9.    Intentional or criminal acts of or at the direction of any insured
>       person, if the loss that occurs:
>       a)    may reasonably expect to result from such acts; or
>       b)    is the intended result of the acts.

(Id. at 13-14).

The property was a two family home, split into two blocks, the 1316 side and the 1318 side. (Def. Ex. H. in Supp. Summ. J.). On February 13, 2003, at approximately 11:15 P.M., a fire occurred on the 1316 side of the property. (Def. Ex. G in Supp. Summ J. 2). At the time

of the fire, the building was unoccupied.  (Def. Ex. F. in Supp. Summ. J., Pirino Dep. 38).

On February 27, 2004, Edward Carey of E.A. Carey Heating and Air Conditioning inspected the property along with Scranton City Fire Inspector Shaun Flynn and Michael Hartley of H.J.H. Investigations.  (Id.; Def. Ex. H. in Supp. Summ J.).  Their investigation revealed that in January 2003, Plaintiff disconnected and bypassed a temperature limit control on a boiler in the basement of the 1316 side of the property.  (Def. Ex. H. in Supp. Summ. J. 4).  Furthermore, on the date of the fire, Plaintiff entered the property between 9 and 10 A.M. and worked near the boiler.  (Id. at 2).  While working, he observed water on the floor and turned off the water supply to the 1316 side of the building.  (Id. at 3; Pirino Dep. 44).  This water source supplied the water for the boiler.  (Def. Ex. H. in Supp. Summ J. 3).

Upon examination of the boiler, Carey discovered that when the boiler's temperature limit switch was disconnected, "there was no other boiler control or component that could intercede and shut off the boiler to prevent overheating of the boiler."  (Id. at 5).  Discoloration on the boiler casting was consistent with exposure to excessively high temperatures while the boiler was operating without water.  (Id.).  Carey concluded that "[w]hen the boiler would operate in the absence of an adequate feed water source, and also with the disconnected limit switch, the operation of that boiler will create an inevitable result of severe overheating of the boiler and a 'dry fire' condition."  (Id. at 7).  Carey found combustible materials, specifically numerous cardboard boxes of magazines, directly behind the boiler.  (Id. at 8-9).  In his expert opinion, Carey determined that excessive heat from the boiler ignited these materials, causing the fire.  (Id. at 8-9).

2

Hartley also concluded that the origin of the fire was the boiler in the basement of the 1316 side of the property. (Def. Ex. G in Supp. Summ. J. 4). He noted that the water source had been removed from the boiler, and the wall and debris behind the boiler had direct flame contact. (Id.). He also discovered a potential accelerant in the area behind the boiler. (Id. at 5). A laboratory analysis determined that the substance contained kerosene. (Id. at 5). Thus, Hartley concluded that the fire originated in the basement of the 1316 side of the property, between the boiler and the back wall. (Id. at 7). The ignition source was the intentionally altered gas-fired furnace that ignited kerosene accelerated cardboard and magazines. (Id.).

On March 31, 2004, Dale J. Cagwin of Robson Forensic Inc. investigated the remains of the property to conduct his analysis of the fire. (Pl. Ex. A in Opp. Summ. J.). Cagwin disagreed with Hartley and Carey. (Id.). His inspection revealed that the area of heaviest fire damage was on the first floor directly above a basement wall to the south and east of the boiler. (Id. at 2). Based on the charring patterns in the basement and the first floor, Cagwin concluded that the fire originated on the first floor, and any damage to the basement resulted from the fire descending from its point of origin. (Id. at 3). Cagwin observed that numerous electrical wires ran through the area of highest damage, and noted that without an electrician's report, he could not rule out electric malfunction as the source of the fire. (Id. at 4). He also explained that kerosene may have been spilled accidently years before the fire because a resident previously used kerosene heaters to provide heat for the house, and he stored these heaters in the basement. (Id.). Finally, Cagwin observed that some materials situated closer to the boiler than the magazines had not ignited, and thus the heat from the boiler was insufficient to ignite

nearby combustibles.  (Id.).  Therefore, in his expert opinion, the boiler overheated prior to February 13, 2003, the heat was insufficient to ignite nearby combustibles, and he could not rule out an electrical fire on the first floor as the source of the fire.  (Id.).

In February 2004, the Commonwealth of Pennsylvania initiated criminal arson and insurance fraud charges against Pirino.  On April 5, 2004, a Magistrate Judge found that the Commonwealth of Pennsylvania had produced insufficient evidence at a preliminary hearing to hold Pirino for trial.  (Pl. Ex. B. in Opp. Summ. J.).

**II.    Jurisdiction**

This Court has jurisdiction pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332.  Plaintiff is a Pennsylvania resident and the defendant is an Illinois corporation with its principle place of business in Illinois.  Because we are sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case.  Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**III.   Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

4

judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**IV.   Discussion**

Pirino's complaint advances two claims. First, he advances a contract claim, asserting that Allstate breached the policy by failing to provide coverage for damages occasioned by the fire. Second, he advances a claim pursuant to 42 PA.C.S.A. § 8371, arguing that Allstate acted in bad faith in refusing to provide coverage. For the following reasons, we will deny summary judgment on the contract claim, but grant summary judgment on the bad faith claim.

### A. Contract Claim

Allstate argues that the plain language of the policy excludes coverage because Pirino's intentional acts caused the fire. The plain language of the policy specifically states,

> Losses We Do Not Cover Under Coverages A and B:
> We do not cover loss to the property . . .consisting of or caused by:
> 9.    Intentional or criminal acts of or at the direction of any insured person, if the loss that occurs:
>     a)    may reasonably expect to result from such acts; or
>     b)    is the intended result of the acts.

(Id. at 13-14).

Allstate argues that Pirino intentionally bypassed the heat limitation on the boiler and shut off the water source, causing the boiler to overheat. He additionally placed flammable materials exposed to an accelerant directly behind the boiler. The overheated boiler ignited the accelerant and the flammable materials, leading to a fire in the building.

Pirino does not contest Allstate's interpretation of the policy, but argues that Cagwin's expert report creates a genuine issue of material fact that the fire was caused by the overheated boiler. We agree. Cagwin submits that the boiler did not start the fire, and the point of origin was on the first floor where he found the area of greatest fire damage. Therefore, we find that a genuine issue of material fact regarding the cause of the fire, and we will deny Allstate's motion to dismiss.

### B. Bad Faith

Pirino argues that it has created a genuine issue of material facts that Allstate acted in bad faith in processing his claim. We disagree.

If an insurer acts in bad faith towards the insured, a court may award interest on the

amount of the claim, punitive damages, or court costs and attorney's fees against the insurer. 42 PA.C.S.A. § 8371.  To recover under 42 PA.C.S.A. § 8371, a plaintiff must establish the following two elements by clear and convincing evidence: "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997) (citing Terletsky v. Prudential Property & Cas Ins. Co., 649 A.2d 680, 688 (1994)). Summary judgment is appropriate when no reasonable jury could find these elements satisfied by clear and convincing evidence. Terletsky, 649 A.2d at 688.  Bad faith is:

> [A]ny frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent.  For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

Id. (citations omitted).

Pirino argues that the delays in processing his claim create a genuine issue of material fact that Allstate acted in bad faith.  We disagree.  Although delay in processing is relevant to our determination, it alone is insufficient to establish bad faith.  "Rather, courts have looked to the degree to which a defendants insurer knew that it had no basis to deny the claimant; if delay is attributable to the need to investigate further or even to simple negligence, no bad faith had occurred." Kosierowski v. Allstate, 51 F. Supp. 2d 583, 589 (E.D. Pa. 1999) (citing Klinger, 115 F.3d at 234).

No reasonable jury could conclude that the delay in processing Pirino's claim demonstrates that Allstate knew that it had no basis to deny his claim.  The fire occurred on

February 13, 2003.  On February 27, experts Carey and Hartley examined the remains of the structure.  On April 23, 2003, Hartley issued a report stating that Pirino intentionally started the fire, and on May 11, 2003, Carey issued a report reaching the same conclusion.  Therefore, Allstate promptly investigated the claim and the investigation revealed a reasonable basis to deny the claim.  In Bostick v. ITT Hartford, 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999), the court granted summary judgment because the insurer's expert report provided a reasonable basis to deny a claim.

> Whether or not the defendants' expert correctly assessed the cause of damage, the plaintiffs have not presented evidence to substantiate their claim that Hartford acted unreasonably.  Bad faith cannot be found where the insurer's conduct is in accordance with a reasonable but incorrect interpretation of the insurance policy and the law.

Id. (citing J.H. France Refractories Co. v. Allstate Ins. Co., 626 A.2d 502, 510 (1993); Terletsky, 649 A.2d at 690; Jung v. Nationwide Mut. Fire Ins. Co., 949 F. Supp. 353, 359 n.7 (E.D. Pa. 1997)).  Therefore, although there may be a genuine issue of material fact as to the correctness of Hartley and Carey's reports, there is no genuine issue of material fact that these reports provided a reasonably basis for Allstate to deny coverage.

Pirino also argues that Allstate acted unreasonably because it caused the Commonwealth of Pennsylvania to file criminal charges against him after he filed his bad faith claim. This argument is specious.  As an initial matter, Pirino has provided no evidence that Allstate played any role in initiating criminal charges; the Commonwealth of Pennsylvania prosecuted the criminal case, not Allstate.  Additionally, Allstate's involvement in the criminal case is irrelevant to a determination of whether it had a reasonable basis to deny Pirino's claim.

Finally, Pirino submits that the criminal preliminary hearing transcript establishes that Allstate acted in bad faith because the Magistrate found that Carey's and Hartley's reports conflicted and thus afforded them no credibility. We disagree.  Nothing in the preliminary hearing transcript indicates that the Magistrate disbelieved Carey or Hartley.  Furthermore, whether the Commonwealth of Pennsylvania produced sufficient evidence to hold Pirino for trial on criminal charges is irrelevant to our consideration of whether Allstate had a reasonable basis to deny the claim.  The Magistrate's determinations at that hearing have no collateral estoppel effect on this Court or Allstate because Allstate was not a party to that hearing.  See Witkoski v. Welch, 173 F.3d 192, 199 (3d Cir. 1999) (noting that collateral estoppel will not apply if the party against whom it is asserted was not a party or in privity with a party in the previous action).

In conclusion, Pirino has failed to establish a genuine issue of material fact that Allstate acted in bad faith.  He has produced no evidence that Carey's and Hartley's reports failed to provide a reasonable basis to deny the claim, or that Allstate knew or recklessly disregarded a lack of a reasonable basis.  Therefore, we will grant summary judgment on the bad faith claim, but deny Allstate's motion for summary judgment on the contract claim.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BARTLEY PIRINO, Jr.,** | : | No. 3:04cv698 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| **v.** | : | |
| | : | |
| **ALLSTATE INSURANCE COMPANY,** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 21st day of October 2005, Defendant Allstate's Motion for Summary Judgment (Doc. 20) is hereby **GRANTED** in part and **DENIED** in part. Summary judgment is hereby **GRANTED** on Plaintiff's bad faith claim pursuant to 42 PA.C.S.A. § 8371 and **DENIED** as to Plaintiff's contract claim.

                                                        **BY THE COURT:**


                                                        **s/ James M. Munley**
                                                        **JUDGE JAMES M. MUNLEY**
                                                        **United States District Court**